UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITIMORTGAGE, INC., | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) Case No. 4:06CV01296 ERW |
| | ) |
| FIRST PREFERENCE MORTGAGE, | ) |
| CORPORATION, *et. al.,* | ) |
| | ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

The matter comes before the Court on Defendants' Motions to Dismiss [doc. #17 and #18].

**I. STATEMENT OF ALIGNMENT OF PARTIES AND CLAIMS BY PLAINTIFF**.

Citimortgage, Inc. ("CMI")[1], successor-in-interest to First Nationwide Mortgage Corporation ("FNMC") and Principal Residential Mortgage Corporation ("Principal"), all were in the business of purchasing, re-selling and servicing residential mortgage loans on the secondary mortgage market. Until serving notice on CMI, FNMC was in the business of originating residential mortgage loans. Since 1996, Defendant First Preference Mortgage Corporation ("FPMC") sold loans to FNMC under a mortgage loan purchase and sale agreement dated May 23, 1996. Since 1997, FPMC sold loans to Principal under an agreement dated March 11, 1997. CMI acquired FNMC on November 7, 2002, and acquired Principal on July 1, 2004. Since 2002, FPMC has been selling loans to CMI under two agreements dated December 26, 2002 and June 30, 2004. Between 1998 and 2004, FPMC sold loans to Principal, FNMC, and CMI that were

---

[1] These facts are taken from Plaintiff's complaint.

1

uninsurable or in some way defective. This is the basis for FPMC's loan repurchase obligations under aforementioned loan purchasing agreements. FPMC ascribed responsibility for defective originations to "rogue former loan officers" and "advised CMI that it had terminated the employees and had made an insurance claim for its losses ¶7." CMI granted FPMC's request, agreeing to allow FPMC a repayment plan to satisfy repurchase obligations under a July 2005 Workout and Forbearance Agreement ("Workout Agreement") upon which FPMC defaulted owing $2.5 million. FPMC also delivered to FNMC, Principal, and CMI on loans not meeting requirements under loan repurchase agreements so that FPMC owes CMI an additional $945,377.86. CMI brings this action to recover damages against FPMC for breach of contract and against David Mann ("Mann"), "because of Mann's personal involvement in and resulting liability for the tortious acts and omissions FPMC committed through him and under his direction ¶ 11." CMI also seeks damages from Citizens Mortgage Corporation ("Citizens"), because FPMC transferred its assets to Citizens "in an effort to avoid the debts FPMC owed to its creditors with Citizens active participation in, and knowledge of and consent to, FPMC's transfer and the purposes of the transfer ¶ 12."

The parties appear before the Court as follows. CMI is a New York Corporation with its principal place of business in St. Louis, Missouri; FPMC is a Texas Corporation with its principal place of business in Waco, Texas, and it is a wholly owned subsidiary of First Financial Corporation ("First Financial"). Citizens is a Texas Corporation with its principal place of business in Waco, Texas; its parent company is Citizens State Bank ("CSB"). CSB is owned by RAM Security Holdings GP, Inc. and RAM Securities Holding, Ltd., both Texas limited partnerships. Mann is an individual residing in McGregor, Texas. He is chairman of the board of directors and president of FPMC. Mann is president and a director of First Financial. Mann is

former president and chairman of the board of Citizens, and he is president, chief executive officer and vice chairman of the board of directors of CSB, and president general partner and the sole director of RAM Security Holdings GP, Inc. Mann and RAM Security Holdings GP, Inc. are sole general partners of RAM Securities Holding, Ltd. FPMC's previous place of business, Citizens' current place of business, and Mann's place of business are 800 Washington Avenue, Waco, Texas 76701.

Citizens seeks dismissal relief under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and 12(b)(3) for improper venue. Mann moves for dismissal of all claims against him under Fed. R. Civ. P. 12(b)(3) for lack of personal jurisdiction.

## II. PERSONAL JURISDICTION ISSUE

If a defendant asserts there is no personal jurisdiction in federal court, the burden of proving that jurisdiction exists is on the plaintiff. *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998); *Burlington Indus.*, 97 F.3d at 1100 (quoting *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir. 1990)). The plaintiff must make a "prima facie showing of personal jurisdiction over the defendant" to survive a motion to dismiss. *Stevens*, 146 F.3d at 543 (citing *Digi-Tel Holdings, Inc. v. Proteq Telecommunications, Ltd.*, 89 F.3d 519 (8th Cir. 1996); *Denver v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1072 (8th Cir. 2004) (plaintiff's prima facie showing must be tested not by the pleadings alone, but by affidavits and exhibits presented with the motions in opposition thereto)). To defeat a motion to dismiss for lack of personal jurisdiction, the non-moving party need only make a prima facie showing of jurisdiction. *Romak v. Rich,* 384 F.3d 979, 983-984 (8th Cir. 2004). The Court may inquire into the factual basis for personal jurisdiction when considering a motion to dismiss for lack of personal jurisdiction and must view the evidence in the light most favorable to the plaintiff. *Stevens*, at 543 (citations

omitted). Evidence is viewed in the light most favorable to the non-moving party, with all factual conflicts resolved in that party's favor; the party seeking to establish the court's *in personam* jurisdiction carries the burden of proof and the burden does not shift to the party challenging jurisdiction. *Romak,* at 984.

In a diversity of jurisdiction action, a federal court may assume jurisdiction over non-resident defendants only to the extent permitted by the long-arm statute[2] of the forum state and by the Due Process Clause.[3] *Denver*, at 1073. To satisfy the constraints of the Due Process Clause, a defendant must have sufficient minimum contacts with the forum state so maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.,* at 1073. The Supreme Court defines two theories for evaluating minimum contacts. Under the concept of general jurisdiction,[4] a court may hear a lawsuit against a defendant who has "continuous and

---

[2] The Missouri long-arm statute provides, in part:

**506.500    Actions in which outstate service is authorized - jurisdiction of Missouri courts applicable, when**

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1)    The transaction of any business within this state;
(2)    The making of any contract within this state;
(3)    The commission of a tortious act within this state; . . .

V.A.M.S. §506.500.

[3] The Due Process Clause of the Fifth Amendment of the United States Constitution provides, in part:
> No person shall be . . . deprived any person of life liberty or property, without due process of law; . . ."

[4] There is nothing in this record to support assumption of jurisdiction by this court over any named defendant in this case on the basis of general jurisdiction, and accordingly, any

4

systematic" contacts with the forum state. *Id.*, at 1073 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). Specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state. *Id.*, at 1073 (internal citations omitted). There must be some act by which a defendant purposefully avails himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of the state's laws. *Id.*, at 1073 (internal citations omitted).

The two prerequisites that must exist to establishing personal jurisdiction over a non-resident defendant are: (1) the forum state's long-arm statute must be satisfied, and (2) due process must not be violated. *St. Jude Medical, Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 591 (8th Cir. 2001) (citations omitted). "Missouri courts have interpreted the [Missouri long-arm statute] broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction." *Clune v. Alimak AB*, 233 F. 3d 538, 541 (8th Cir. 2000). Therefore, the Court need only inquire into whether due process is met. *Enterprise Rent-a-Car Co. v. Stowell*, 137 F. Supp. 2d 1151, 1155 (E.D. Mo. 2001).

To satisfy due process, a plaintiff must demonstrate that there are sufficient "minimum contacts" between the defendant and the forum state so "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607 (8th Cir. 1998) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Sufficient contacts must exist such that the defendant should "reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). A party may anticipate being haled into court in a

---

reference to personal jurisdiction as to the motioned defendants will speak only to specific jurisdiction.

particular jurisdiction if he, she or it "purposely directed" its activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. *See Burger King Corp v. Rudzewicz,* 471 U.S. 462, 472 (1985). The defendant's contacts must be more than "random," "fortuitous," or "attenuated"; they must include "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the State, thus involving the benefits and protections of its laws." *Id.* (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Even if purposeful contacts with the forum state exist, the Court must consider whether subjecting the defendant to personal jurisdiction would comply with fair play and substantial justice. *International Shoe*, 326 U.S. at 320. The factors to be considered are: (1) the nature and quality of the contacts, (2) the quantity of the contacts, and (3) the relation of the cause of action to the contacts. The Court may also consider the interest of the forum state in the litigation and the convenience or inconvenience of the parties; although, these factors are of lesser significance. *Guinness*, 153 F.3d at 614. "[D]ue process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." *Id.* (citing *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)).

CMI claims that the tort serving as the basis for personal jurisdiction to attach to both Citizens and Mann arises from business transactions wherein CMI was owed money by FPMC which had its assets transferred to another corporation in Texas. CMI confesses that the transfer was accomplishd on the basis of an appraisal, but argues that the appraisal was "wrong." CMI believes that Mann provided the structuring to Mr. Charles D. LaCombe, former Director of FPMC, for setting-up a parallel business in Citizens which Mr. LaCombe embraced, which

6

activities amounted to a fraudulent transfer in violation of CMI's rights. In CMI's argument, its counsel posed the question, "what is Citizens' involvement in this transaction?" Counsel then proceeded to answer the question by suggesting that it is Mr. LaCombe's "taint[]" as former president of FPMC and later president and C.E.O. of Citizens which received assets of FPMC, with Citizens, continuing to conduct the same business it conducted as FPMC.

The Court first observes that a lot of fraudulent conduct and many actionable acts may very well have occurred in the State of Texas, where courts there may so conclude, but the law is clear, that a party may not reach out and bring an unwilling defendant into a desired forum, because a party would prefer to litigate in a convenient court, when the facts of the case and the law require the lawsuit to go forward in a potentially unfavorable forum. Most of CMI's arguments for personal jurisdiction over motioned defendants relate to actions of Mann outside the State of Missouri. CMI relies heavily on the case of *Sun World v. March Shipping*, 585 F. Supp. 580 ( E.D. Mo. 1984), where the District Court concluded that movants were subject to the Missouri long-arm statute because the tortious act component of that statute applies to alleged tortious acts of movants that occurred outside Missouri, "where through wholly extraterritorial acts it sets in motion a course of action deliberately designed to move into the forum state in order to injure plaintiff's business." *Id.*, at 583-584. This case is no longer persuasive. Under current controlling law, to prevail in gaining personal jurisdiction based on Mo. Rev. Stat. 560.500 1. (3), CMI must show that Mann had substantial contact in Missouri related to the commission of an identified tort. "In other words, the cause of action must 'arise out of' or 'relate to' a defendant's activities within a state." *Romak*, at 984 (internal citation omitted). There is nothing in the record directed to Mann's tortious activities in the State of Missouri. The memorandum of asset purchase and the promissory note related to CMI and FPMC were

negotiated outside Missouri. The valuation of FPMC's retail and wholesale loan production capabilities was performed outside Missouri. None of FPMC's acquired assets were located in or transferred to Missouri. This Court has no personal jurisdiction over Citizens or Mann under Mo. Rev. State 506.500 1. (3).

### A. Personal Jurisdiction As It Relates To Citizens

The Court shall, as it must, consider the allegations and evidence in the light most favorable to CMI, which relies heavily upon allegations relating to Mann's activities in the State of Missouri and in the State of Texas, in its arguments to persuade the Court that the Court has personal jurisdiction over both Citizens and Mann. Mann made three trips to the State of Missouri in February 2004, February 2005, and April 2005, to meet with CMI personnel to discuss business matters. The two trips in 2005 were to negotiate matters leading to the execution of the Workout Agreement between CMI and FPMC. Mann had some involvement with two contracts,[5] neither of which were executed in the State of Missouri by Mann. Both contracts were executed in the State of Texas. Additionally, CMI argues that the Workout Agreement between CMI and FPMC contained a forum selection clause specifying Missouri as the proper venue for lawsuits arising from this agreement. CMI invites the Court to find personal jurisdiction over both Citizens and Mann based on the principle that Citizens and FPMC are closely related, and therefore, the forum selection clause applicable to FPMC is binding on Citizens and Mann. CMI further argues that Mann's business transactions in the State of Missouri sufficiently meet the requirements of Mo. Rev. Stat. 560.500(1) and (2).

---

[5] The first contract signed by Mann was a Correspondent Agreement Form 200 dated December 26, 2002 and the Workout and Forbearance Agreement ("Workout Agreement") was signed in the State of Texas by Mann on July 20, 2005.

The record is bereft of any evidence that Citizens ever had any contact with the State of Missouri. Any fraudulent transfer of assets involving Citizens occurred in the State of Texas. There is no identified contact between Citizens and the State of Missouri to serve as a means of this Court acquiring personal jurisdiction over Citizens. If this Court has *in personam* jurisdiction over Citizens, it must be through the forum selection clause in paragraph 10 of the Workout Agreement:

> The substantive law of the State of Missouri shall govern the parties' rights and obligations under this Agreement, without regard to its principles concerning choice of laws, and shall govern the validity, construction, enforcement and interpretation of this Agreement. This Agreement is made and is to be performed in St. Charles County, Missouri.
>
> > Any lawsuit or proceeding arising out of the validity, construction, enforcement or interpretation of this Agreement, and any lawsuit or proceeding arising out of or relating to any claims, demands, causes of action, debts, damages, obligations or liabilities discussed in or created by this Agreement, shall be filed and venue shall be proper only in St. Charles County, Missouri (either in the Missouri state courts sitting in St. Charles County, Missouri, or in the United States District Court for the Eastern District of Missouri), and that lawsuit or proceeding shall be governed by the substantive laws of the State of Missouri.

Paragraph 12 of the Workout Agreement provides:

> "This Agreement shall be binding upon and inure to the benefit of the parties and their respective agents, directors, employees, representatives, successors and assigns."

It is undisputed that the forum selection clause is binding on FPMC, a party to the Workout Agreement, which does not challenge the Court's personal jurisdiction. It is also undisputed that Citizens is not a party to the agreement. CMI makes no persuasive arguments that the forum selection clause is binding on Citizens. The Court finds that the forum selection

9

clause does not serve as a basis for the Court to acquire personal jurisdiction over Citizens, and Citizens' motion to dismiss for lack of personal jurisdiction will be granted.

### B. Citizens' Venue Argument

Citizens advances the argument that 28 U.S.C. § 1391(a)[6] does not confer jurisdiction over Citizens because there is no defendant that resides in Missouri; that if all defendants are residents of a particular state, venue is proper where the acts took place, and Citizens says that there is no dispute that all acts took place in Texas. Citizens opines that if CMI prevails, it will ultimately be going to the State of Texas where the assets it seeks to recover are located. Because the Court has no personal jurisdiction over Citizens, it will not address this argument by Citizens.

### C. Personal Jurisdiction As It Relates To Mann

In determining whether this Court has personal jurisdiction over Mann, the following factors, as they relate to Mann, will be individually and collectively considered. Mann made three business trips to Missouri to conduct business concerning FPMC and to negotiate agreements with CMI personnel. Mann executed the Correspondent Agreement Form 200 and the Workout Agreement for FPMC, albeit in the State of Texas. Mann had approximately 26 e-mails directed to CMI in Missouri. Mann is or was chairman of the board of directors and president of FPMC. He is or was president and chairman of the board of directors of Citizens, the Texas company that received the assets of FPMC. He came to Missouri to negotiate in a manner CMI could expect to be in good faith. Once agreements were made, the record supports lack of good faith by him in

---

[6]"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or . . . ."

notifying CMI at the first opportunity when it became known that FPMC's loans were defective. Business opportunities were made available to him in the State of Missouri, and Mann purposefully availed himself of the privilege of conducting activities within Missouri, thereby invoking the benefits and protections of Missouri's laws. Mann's contacts in Missouri are closely related to the subject matter of this action. The State of Missouri has a legitimate interest in providing a forum to a corporate citizen claiming its business has been damaged and its economic interest is adversely affected from losses suffered in Missouri. The Court finds that CMI has carried its burden in proving that Mann has minimal contacts with Missouri. Having made that conclusion, the Court finds that assertion of personal jurisdiction over Mann would comport with fair play and substantial justice. *Denver*, at 1073.

Additionally, this Court has personal jurisdiction over Mann because he is bound by the terms of the forum selection clause in the Workout Agreement to litigate here. When Mann executed the two aforementioned agreements, he was president and chairman of the board of directors of FPMC. FPMC was a party to those agreements. Mann is closely related to the disputes arising out of those agreements, or either of them, and is properly bound by the forum selection clause in the Workout Agreement. The Court finds that it is foreseeable that he would be bound by the forum selection clause. *See Marano Enterprises of Kansas v. Z-teca Restaurants, L.P.,* 254 F.3d 753, 757 (8th Cir. 2001) (citing *Hugel v. Corp. of Lloyds,* 999 F.2d 206, 209-210 (7th Cir. 1993)). The Court finds that this Court has personal jurisdiction over Mann and his motion to dismiss will be denied.

**ACCORDINGLY, IT IS ORDERED** that Citizens' Motion to Dismiss [doc. #17] is **GRANTED**.

**IT IS FURTHER ORDERED** that Mann's Motion to Dismiss [doc. #18] is **DENIED.**

**IT IS FURTHER ORDERED** that Citizens' Motion to Strike [doc. #68] is **DENIED**, as moot.

So Ordered this 7th Day of September, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE